UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIFFANY HALL,
as next friend to J.H.
  4421 Ponds Street, N.E.
  Washington, DC 20019

       Plaintiff,

  v.

TIERRA WOOD (Badge #653)
  WMATA Transit Police
  600 5th Street, N.W.
  Washington, DC 20001

       and

L. MCCOY (Badge #649)
  WMATA Transit Police
  600 5th Street, N.W.
  Washington, DC 20001

       Defendants.

No. _____

JURY TRIAL DEMANDED

**COMPLAINT**
(Seeking damages for police misconduct: violation of rights under the
Constitution of the United States and the law of the District of Columbia)

**INTRODUCTION**

1.    This is an action for damages and other relief by Tiffany Hall, on behalf of her minor son J.H., who was assaulted, battered and arrested without any lawful basis by Defendant WMATA Transit Police Officers Tierra Wood and L. McCoy. Defendants Wood and McCoy also tortuously caused criminal charges to be brought against J.H. for assault on a police officer, and fabricated evidence to justify their excessive use of force. The criminal charges against J.H. were dismissed with prejudice at trial. Defendants' actions were an intentional and outrageous

1

violation of J.H.'s rights under the Fourth Amendment to the Constitution and constituted false arrest, assault, battery and malicious prosecution under the laws of the District of Columbia. Ms. Hall, as next friend to J.H., accordingly seeks compensatory and punitive damages, attorneys' fees, costs and other appropriate relief.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). Ms. Hall brings this action on behalf of J.H. under 42 U.S.C. § 1983 to vindicate J.H.'s rights established by the Fourth Amendment to the United States Constitution. Plaintiff's claims under the common law of the District of Columbia arise from the same occurrences as the constitutional claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the Plaintiff's claim occurred in the District of Columbia.

## PARTIES

4.      Plaintiff Tiffany Hall is an adult resident of the District of Columbia. She is J.H.'s mother and custodial parent. She brings this action on behalf of J.H.

5.      J.H. is a juvenile resident of the District of Columbia.

6.      Defendant Tierra Wood (Badge #653) is a sworn officer employed by the Washington Metropolitan Area Transit Authority (WMATA). At all times during the events at issue she was acting under color of law and within the scope of her employment. She is sued in her individual capacity.

7.      Defendant L. McCoy (Badge #649) is a sworn officer employed by WMATA. At all times during the events at issue she was acting under color of law and within the scope of her employment. She is sued in her individual capacity.

## FACTS

### Unlawful Seizure and Excessive Force

8.      At the time of the incident in question, J.H. was 14 years old, stood 5 feet 2 inches tall and weighed approximately 91 pounds. He was a 9th grade student at Phelps Architecture, Construction & Engineering High School, which is a public high school in the District of Columbia.

9.      On June 4, 2012, J.H. was on his way home from school via the X-2 and V-7 buses when a teenage boy assaulted him as he attempted to transfer buses at the Minnesota Avenue Metrobus station. Defendants Tierra Wood and L. McCoy were on a routine patrol in the area and intervened in the skirmish. Officers Wood or McCoy shouted at the boys to "sit the f--- down." The lead assailant stopped punching J.H. and sat down.

10.     J.H. believed he was free to go.  He picked up his backpack and walked toward the bus terminal in an attempt to continue on his way home. As J.H. walked away, Officer Wood approached him from behind and grabbed his arm. She did not verbally communicate that she was a police officer. Without turning to see who was grabbing him, J.H. shrugged his arm in an attempt to free himself. In response, Officer Wood with one arm twisted J.H.'s arm behind his back and with her other arm restrained him in a chokehold.

11.     Under District of Columbia law, chokeholds are categorized as either trachea holds or carotid artery holds. Both are considered lethal force.

12. A trachea hold "means any weaponless technique or any technique using the officer's arm, a long or short police baton, or a flashlight or other firm object that attempts to control or disable a person by applying force or pressure against the trachea, windpipe, or the frontal area of the neck with the purpose or intent of controlling a person's movement or rendering a person unconscious by blocking the passage of air through the windpipe." D.C. Code § 5-125.02(1). The use of a trachea hold by law enforcement officers is prohibited under any circumstances. D.C. Code § 5-125.03(a).

13. A carotid artery hold "means any weaponless technique which is applied in an effort to control or disable a person by applying pressure or force to the carotid artery or the jugular vein or the sides of the neck with the intent or purpose of controlling a person's movement or rendering a person unconscious by constricting the flow of blood to and from the brain." D.C. Code § 5-125.02(2). The carotid artery hold is classified as a service weapon and its use by law enforcement officers is prohibited except under circumstances in which the life of the officer or a civilian is at risk. D.C. Code § 5-125.03(a).

14. Metro Transit Police Officers in the District of Columbia are subject to the same limitations, including regulatory limitations, in the performance of their duties as Metropolitan Police Officers. Metro Transit Police Officers in the District of Columbia are also subject to the same limitations on the use of weapons as imposed on Metropolitan Police Officers. D.C. Code § 9-1107.1.

15. Metro Transit Police General Order 130 provides, "Control holds, applied to an individual's neck, that are intended to compress either the trachea or carotid arteries are prohibited."

16. While in the chokehold, J.H.'s breathing was impaired and he felt lightheaded.

4

17. Officer Wood forcibly shoved J.H. against the side of the bus shelter. Officer Wood turned J.H. so he was facing her with his back pressed against the bus shelter. She then punched him five to seven times in the torso with a closed fist. While Officer Wood continued to hold J.H. against the side of the bus shelter, Officer McCoy then punched J.H. about three times in the torso with a closed fist. J.H. attempted to block their blows and protect himself.

18. Officer Wood then sprayed J.H. in the face with pepper spray at close range. Officer Wood testified at trial that J.H. was not resisting when she sprayed him with pepper spray.

19. Pepper spray, also known as Oleoresin Capsicum (OC) spray, is an inflammatory agent derived from the pepper plant. OC spray causes an almost instantaneous swelling of the eyes and breathing passages, as well as an intense burning sensation in the eyes, throat and exposed areas of skin. When inhaled, the respiratory tract becomes inflamed and breathing is significantly restricted. Other physical effects may include involuntary closing of the eyes, coughing, choking, lack of upper body strength, lack of coordination and nausea. Psychological effects such as disorientation and fear may also occur.

20. Metropolitan Police regulations prohibit the use of pepper spray against an individual who is not actively resisting a police officer. Metropolitan Police General Order RAR-901.04. Metro Transit Police Officers in the District of Columbia are subject to the same limitations, including regulatory limitations, in the performance of their duties as Metropolitan Police Officers. D.C. Code § 9-1107.1.

21. The OC spray caused J.H. to become disoriented and to stumble in a circle. He could not open his eyes and could not see, and he felt an extremely painful, burning sensation in his eyes and in his chest. The OC spray also triggered J.H.'s asthma and made it hard for him to

breath. Officer Wood or McCoy punched J.H. in the stomach one more time, causing him to collapse down on the curb.

22.     Officer Wood then placed J.H. under arrest, handcuffed him and called emergency medical services.

23.     A friend who witnessed the incident called J.H.'s mother, Plaintiff Tiffany Hall. When Ms. Hall arrived on the scene, she observed six police officers surrounding J.H. He was sitting on the curb, crying.

24.     Medics treated J.H. at the scene and then transported him by ambulance to Children's National Medical Center for further treatment. J.H. spent approximately three hours at the hospital before being released into police custody.

25.     Upon release, J.H. was charged with one count of misdemeanor assault on a police officer. He was incarcerated for three nights at the Youth Services Center.

26.     At the time of the incident, it was clearly established as a matter of law that a police officer may not use excessive force against an individual when effecting an arrest.

27.     No reasonable police officer in the position of Officers Wood or McCoy could have believed it was reasonable and necessary to use lethal force (the choke hold) against J.H. in light of his size, the nature of the incident, his nonviolent conduct and the lack of any threat to the safety of the officers. No reasonable police officer in the position of Officers Wood or McCoy could have believed it was necessary to repeatedly punch J.H. in light of his size, the nature of the incident, his nonviolent conduct and the lack of any threat to the safety of the officers. No reasonable police officer in the position of Officers Wood or McCoy could have believed it was reasonable and necessary to use pepper spray against J.H. in light of his size, the

nature of the incident, his nonviolent conduct, the lack of any threat to the safety of the officers and his lack of resistance at the time Officer Wood used the pepper spray.

28.   At the time of J.H.'s arrest, it was clearly established as a matter of law that a police officer may not seize or arrest an individual without probable cause to believe that the individual had committed, was committing or was about to commit a criminal offense.

29.   No reasonable police officer in the position of Officers Wood or McCoy could have believed that there was probable cause to arrest J.H. for assault on a police officer.

## Malicious Prosecution

30.   On August 29, 2012, the Superior Court of the District of Columbia held a trial on the charge of assault on a police officer brought against J.H.

31.   Officer Wood completed a Delinquency Report and an Event Report ("the June 4 Reports") on the day of the incident.

32.   In the narrative section of the June 4 Reports, Wood wrote that J.H. "began fleeing from the scene." At trial, Officer Wood admitted that J.H. was merely walking away, but that she discerns no difference between "fleeing" and "walking."

33.   In the narrative section of the June 4 Reports, Officer Wood wrote that "a physical stop of the respondent was then initiated." At trial, Officer Wood testified that she grabbed J.H.'s arm. Officer Wood claimed she did not understand the word "chokehold."

34.   In the narrative section of the June 4 Reports, Officer Wood wrote that J.H. then swung his arm in her direction. At trial, Officer Wood testified that he did not make contact with her and did not continue swinging after he turned and saw that she was a police officer.

35.   In the narrative section of the June 4 Reports, Officer Wood wrote that Officer McCoy "attempted to assist" Officer Wood. She omitted that both she and Officer McCoy

7

repeatedly punched J.H. At trial, Officer Wood admitted that Officer McCoy punched J.H. Officer Wood testified that, in her mind, punching is "attempting to assist."

36. In the Delinquency Report, Officer Wood reported that J.H. stated, "I wrapped my arms around the officer." At trial, she testified that she heard J.H. make this statement to his mother at the hospital. Officer Wood testified that though she always carries a notepad, she did not make a note of this statement at the time, or at any other time. She testified that the only place the statement is written is in the Delinquency Report, which she completed at some point after she left the hospital and had arrived back at the police station.

37. In the narrative section of the June 4 Reports, Officer Wood wrote that after being sprayed with pepper spray, J.H. again attempted to flee the scene. At trial, Officer Wood testified that by "flee" she meant that J.H. walked in a small circle in front of the bus shelter before collapsing to the ground. Officer Wood testified that she is justified in using pepper spray any time a 90-pound 14-year-old takes "a swing" at her.

38. Officer Wood and Officer McCoy both completed Use of Force Reports. The Use of Force reports are undated. On information and belief, both of these reports were written at least seven weeks after the date of the incident.

39. On information and belief, on July 23, 2012, seven weeks after the incident, Officer Wood told the prosecutor in J.H.'s criminal case that she had not written a Use of Force Report. On information and belief, after further inquiry from the prosecutor, Officer Wood then created a Use of Force Report, which was disclosed to J.H.'s defense counsel on July 26, 2012.

40. At trial, Officer Wood testified that she had completed a Use of Force Report at the time of the incident, but that she did not know where it was. Officer Wood testified that the Use of Force Report supplied to defense counsel and used at trial was completed after the

prosecutor spoke with her on July 23, 2012. On information and belief, Officer Wood did not inform the prosecutor about the allegedly missing Use of Force Report at any time prior to her testimony at trial. On information and belief, Officer Wood never completed a Use of Force Report at the time of the incident.

41. In the Use of Force Report completed seven weeks after the incident, Officer Wood wrote that J.H. reached for her duty belt during the struggle. On information and belief, this statement is false. Officer Wood did not include this statement in the Delinquency Report or the Arrest Report, both of which she completed on the day of the incident.

42. At J.H.'s trial, the court dismissed the charge with prejudice after hearing the testimony of the prosecution's only witness, Officer Wood.

43. On January 7, 2013, the Superior Court judge granted J.H.'s motion to seal the record of his trial, finding, "as a matter of law, movant is innocent of misdemeanor assault on a police officer."

44. At all times relevant to this complaint, Officers Wood and McCoy acted under color of law, statute, custom or usage of the District of Columbia.

45. Officers Wood and McCoy acted with malice toward J.H. and with reckless indifference to and in deliberate disregard of his constitutional and other legal rights.

### Harm to Plaintiff

46. J.H. suffered physical injuries and emotional distress. The officers' punches resulted in a bruised elbow and multiple bruised ribs. The pepper spray triggered J.H.'s asthma, and caused severe pain, eye irritation and difficulty breathing. Upon arrival at the hospital, J.H. reported that he could not open his eyes and that they burned. Emergency room doctors prescribed J.H. albuterol for his asthma and antibiotic drops for his right eye.

47. The assault, battery, arrest, imprisonment and prosecution of J.H. were emotionally traumatic for him and have had lasting impacts. At the time of the incident, J.H. felt terrorized and humiliated. Since that time, other children have teased him about the incident, causing him to be embarrassed and angry. For several months following the incident, he frequently thought about it and felt like crying.

## CLAIMS FOR RELIEF

### Claim I: Violation of Fourth Amendment Rights – Unlawful Seizure and Excessive Use of Force

48. J.H.'s conduct on June 4, 2012, did not provide probable cause to believe that he had committed, was committing or was about to commit a crime. Defendants' arrest and assault of J.H. without probable cause violated J.H.'s right under the Fourth Amendment to the United States Constitution to be free of unreasonable seizure and the use of excessive force. Violation of that right is made actionable by 42 U.S.C. § 1983, and Officers Wood and McCoy are jointly and severally liable for compensatory and punitive damages.

49. The relevant law was clearly established at the time of Defendants' actions. No reasonable police officer could have believed that J.H.'s conduct justified excessive force and seizure.

### Claim II: False Arrest

50. Defendants' arrest of J.H. without probable cause constitutes false arrest under the law of the District of Columbia, for which Officers Wood and McCoy are jointly and severally liable for compensatory and punitive damages.

### Claim III: Assault and Battery

51. Defendants' intentional use of force against J.H., by placing him in a chokehold, throwing him against the side of a bus shelter, repeatedly punching him in the torso and spraying

10

him with OC spray at close range, all without legal justification, constitutes assault and battery under the law of the District of Columbia. Officers Wood and McCoy are jointly and severally liable for compensatory and punitive damages.

### Claim IV: Malicious Prosecution

52.     Defendants' intentional actions caused unjustifiable and unreasonable criminal litigation to be initiated against J.H. in reckless and willful disregard of his rights and without probable cause. The criminal case terminated in J.H.'s favor when a judge dismissed the charge with prejudice. This constitutes malicious prosecution under the law of the District of Columbia, and Officers Wood and McCoy are jointly and severally liable for compensatory and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a)     FIND that the actions of Defendants Tierra Wood and L. McCoy, as alleged herein, violated the rights of J.H. under the Fourth Amendment to the United States Constitution and the laws of the District of Columbia;

(b)     ENTER JUDGMENT awarding compensatory and punitive damages against Defendants in an amount appropriate to the evidence adduced at trial;

(c)     ENTER JUDGMENT awarding costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988; and

(d)     GRANT such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

                Respectfully submitted,

                */s/ Arthur B. Spitzer*
                Arthur B. Spitzer (D.C. Bar No. 235960)
                artspitzer@aclu-nca.org

                Frederick V. Mulhauser (D.C. Bar No. 455377)
                fmulhauser@aol.com

                */s/ Jennifer Wedekind*
                Jennifer Wedekind (D.C. Bar No. 1012362)
                jennifer@aclu-nca.org
                American Civil Liberties Union of the Nation's Capital
                4301 Connecticut Avenue, N.W., Suite 434
                Washington, D.C. 20008
                Tel. 202-457-0800
                Fax 202-457-0805

                Counsel for Plaintiff

May 8, 2013